UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

JAQUAN PAUL,

                            Plaintiff,

        -against-

THE CITY OF NEW YORK, a municipal corporation;
POLICE OFFICER TIMOTHY DONOHUE
(Shield Number 5558), in his individual and official
capacities; POLICE OFFICERS JOHN & JANE DOE
#1-5, in their individual and official capacities,

                            Defendants.
-------------------------------------------------------------------------------X

**COMPLAINT**

JURY TRIAL DEMANDED

15-cv-6955

       Plaintiff, Jaquan Paul, by his attorney, Ken Womble, alleges for his complaint against the defendants as follows:

## PRELIMINARY STATEMENT

    1.    Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights guaranteed by the Constitutions of the Unites States and the State of New York.

## JURISDICTION

    2.    This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

    3.    Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

    4.    Plaintiff invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any and all state constitutional or common law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same controversy.

## VENUE

5. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that this is the District in which the events or omissions underlying the claim arose.

## JURY DEMAND

6. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7. The Plaintiff is an African-American male and was at all relevant times a citizen of the City and State of New York.

8. Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9. Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

10. At all times hereinafter mentioned, the individually named defendants, Police Officer Timothy Donohue (Shield No. 5558) and Police Officers John & Jane Doe #1-5, were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

11. At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official

rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

12.   Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

13.   Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

### FACTS

14.   On July 21, 2015, at approximately 2:10 a.m., plaintiff was exiting the business at 1263 Nostrand Avenue, Brooklyn, New York.

15.   Two defendant officers approached plaintiff and detained him by each of the defendant officers holding one of plaintiff's arms.

16.   The two defendant officers then began to twist plaintiff's wrists and arms, causing pain to plaintiff.

17.   Plaintiff cried out and moved his body in an attempt to ease the pain.

18.   One of the defendant officers then grabbed plaintiff around the torso, picked him up and slammed him to the ground, injuring plaintiff's back and arms.

19.   Another defendant officer approached with his asp baton in his hand.

20.   While two defendant officers had plaintiff pinned to the ground, the defendant officer with the asp used said asp to strike plaintiff in the leg twice, injuring plaintiff and causing him extreme pain.

21.   An onlooker who was recording the incident saw the defendant officer approaching and pleaded with him not to hit plaintiff, who was on the ground with multiple defendant officers on top of him.

22. Defendant officer then looked into the camera and responded, "I hit him. I had to."

23. Defendant officers cuffed plaintiff's arms behind his back and sat him upright.

24. In the video, blood can be seen on plaintiff's left pants leg, where defendant officer struck him with an asp.

25. As a result of defendant officers' actions, plaintiff suffered serious physical pain and injury. Although plaintiff notified defendant officers that he was in severe pain, defendant officers refused to obtain any medical care or assistance for plaintiff.

26. Plaintiff continued to request medical attention for his injuries, but was instead transported to the 71st Precinct, 421 Empire Boulevard, Brooklyn, New York, 11225, and did not receive the medical attention he needed.

27. Plaintiff was arraigned on or about July 22, 2015 and charged with Penal Law §145.00 criminal mischief in the fourth degree and Penal Law §205.30 resisting arrest.

28. Upon his release on July 22, 2015, plaintiff took himself to Kings County Hospital to receive medical attention for the injuries sustained when he was assaulted by the defendant officers.

29. Plaintiff did, in fact, receive medical care at Kings County Hospital for injuries to his left leg and left elbow.

### FIRST CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth Amendment Violation for Excessive Force*
(Against the Individual Officer Defendants)

30. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "29" with the same force and effect as if fully set forth herein.

31. While in the course of their duties and while acting under color of law,

4

defendant officers affected a seizure and arrest of plaintiff by intentionally using excessive physical force against plaintiff, including but not limited to slamming plaintiff to the ground and striking him multiple times with an asp baton.

32. The physical force the Defendant police officers used on plaintiff was objectively unreasonable and wholly unnecessary.

33. The defendant officers' use of excessive physical force caused injuries, including but not limited to, severe pain to the plaintiff's back, left elbow and left leg.

34. By virtue of the foregoing, the defendant officers deprived plaintiff of his Fourth Amendment rights under the United States Constitution to be free from excessive force and are liable to plaintiff under 42 U.S.C. §1983.

## SECOND CAUSE OF ACTION
*42 U.S.C. § 1983- Fourth Amendment Violations for Failure to Intervene*
(Against the Individual Officer Defendants)

35. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "34" with the same force and effect as if fully set forth herein.

36. Defendant officers who did not participate in plaintiff's arrest, but observed the unlawful actions alleged herein, had an opportunity to prevent such conduct, and failed to intervene.

37. By virtue of the foregoing, the defendant officers deprived plaintiff of his Fourth Amendment rights under the United States Constitution to be free from excessive force are liable to plaintiff under 42 U.S.C. §1983

## THIRD CAUSE OF ACTION
*Monell Claim - Municipal Liability*
(Against Defendant City)

38. Plaintiff repeats, reiterates, and realleges each and every allegation contained in

paragraphs numbered "1" through "37" with the same force and effect as if fully set forth herein.

39. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

40. However, the City of New York has isolated NYPD officers like Police Officer Timothy Donohue and Police Officers John and Jane Doe #1-5 from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers.  Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.

41. In addition to prior complaints and lawsuits, the City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers use excessive force against individuals,

bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

42. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiff.

43. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

44. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong

7

disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

45. In Floyd v. City of New York, 08-cv-01034-SAS-HBP, Judge Scheindlin found that the City acted with "deliberate indifference toward the NYPD's practice of making unconstitutional stops and conducting unconstitutional frisks" and adopted "a policy of indirect racial profiling by targeting racially defined groups for stops based on local crime suspect data." (Opinion and Order, dated August 12, 2013, P.13).

46. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

47. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

48. As a result of the foregoing, Plaintiff Antrone Nelson is entitled to compensatory damages in an amount to be determined by a jury and is further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.   Compensatory damages in an amount to be determined by a jury;

b.   Punitive damages in an amount to be determined by a jury;

c.   Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

d.   Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated: New York, New York
      November 7, 2015                    By:   Ken Womble

*/s/ Ken Womble*
_____

Ken Womble
Attorney for Plaintiff
Moore Zeman Womble, LLP
66 Willoughby St.
Brooklyn, New York 11201
(T) (718) 514-9100
(F) (917) 210-3700
womble@brooklynattorney.nyc

9